## Springboro Volunteer Fire Department and Relief Association v. J.C. Moore Industries Sales Corporation

*Alan L. Pepicelli,* for plaintiff.
*Keith R. Mason,* for defendants.

THOMAS, *P.J.,* December 15, 1988—This matter is before the court on defendants' preliminary objections in which they seek to have the court dismiss or strike several of the pleadings within plaintiff's complaint. The following is a summary of the factual background from which this matter stems.

Defendants J. C. Moore Industries Sales Corporation and Gary A. Rhodes, individually and doing business as J.C. Moore Industries and J.C. Moore Industries Apparatus Division, specialize in the repair and the renovation of fire trucks and equipment. Plaintiff, a non-profit unincorporated association, operates as a volunteer fire department for the Borough of Springboro. On or about December 15, 1982, plaintiff consulted defendants through defendant Gary A. Rhodes, as to the cost and repair of the plaintiff's 1971 Ford Pumper-Tanker. At the time of said consultation plaintiff received a quotation from defendant Gary A. Rhodes, allegedly act-

ing on behalf of all defendants, in the amount of $12,000, which described the necessary repairs and the type and quality of materials defendants would use in making such repairs. The quotation specifically stated that no body filler or fiberglass was to be used. Plaintiff delivered the fire truck to defendants' place of business (J.C. Moore Industries) in mid-December 1982. On March 15, 1983, plaintiff alleges that the defendants, through defendant Gary A. Rhodes, notified plaintiff that the fire truck had been completed satisfactorily in accordance with the quotation. Plaintiff alleges that in reliance upon said notice, it accepted the fire truck as being properly repaired and paid defendants $12,000. In July 1986 the body of the fire truck began to sag and deteriorate. At that time plaintiff claims it first discovered that various repairs provided by defendants had been improperly performed or omitted. Plaintiff alleges that in contrast to the repair work and specifications set forth in the quotation, body filler and fiberglass were used, new bracing was omitted, and the fire truck was not sandblasted, properly primed or properly painted. In addition to the $12,000 the plaintiff already has paid to defendants, plaintiff claims it will cost approximately $24,000 more to have the fire truck properly repaired. Plaintiff's complaint sets forth four separate causes of action in breach of contract, negligence, common-law fraud and unfair trade practices.

## Count IV

Defendants first object to count IV of plaintiff's complaint, which alleges a private cause of action under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1, et seq. Pursuant to 73 P.S. §201-9.2(a), the act permits a private cause of action to be brought by:

"Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act. . ."

Defendants argue that federal courts applying Pennsylvania law have interpreted this act to apply strictly to consumers purchasing goods for their own personal use. Because plaintiff is a non-profit association and is in the business of fire control, defendants claim that plaintiff is not a "person" under the act and that plaintiff's use of its fire equipment is for a business purpose, not for personal, family or household purposes as required by the act. Defendants argue that plaintiff is not within the group of consumers the act was intended to protect and should not be used to bring a private action under the act. Defendants ask that count IV be dismissed or, in the alternative, be stricken as not in conformity with the law of the Commonwealth of Pennsylvania.

Plaintiff argues that the definitional section of the act, 73 P.S. §201.2, defines "person" as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities," and therefore plaintiff is a "person" within the meaning of the act. Plaintiff further argues that the word "personal," as defined by Black's Law Dictionary, means "appertaining to the person." Plaintiff submits that its purchase of services for its fire truck falls within the scope of the act as being "primarily for *personal* . . . . purposes" because such purchase could not be more *personal* to anyone other than a fire department whose purpose is to control fires. Plaintiff therefore claims that it

does not fall within the category of consumers the act meant to protect and count IV should stand.

The preamble to the first enactment of the act states that the act was for:

"Prohibiting unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, giving the attorney general and district attorneys certain powers and duties and providing penalties." Act of December 17, 1968 (P.L. 1224).

The purpose of the act later was broadened when the legislature re-enacted and amended the act to include:

"Prohibiting additional unfair methods of competition and unfair or deceptive acts or practices, and *giving additional powers and rights to consumers.*" Act of November 24, 1976 (P.L. 1166). (emphasis supplied)

The act accomplished its additional purpose by providing *consumers* with a private cause of action under section 9.2 of the act.

In reading the act, its re-enactment and amendment, and the relevant case law cited by both parties, we do not believe that repairs to a fire company's fire truck are within purview of the type of consumer purchases the legislature intended to protect. The services performed to plaintiff's fire truck were not services purchased primarily to be consumed *"personally"* or by the volunteer fire company *"family"* as a whole outside plaintiff's business of controlling fires; nor would such services be used primarily in the *"household"* of the plaintiff's fire hall. Had the legislature intended the act to include purchases by volunteer or charitable organizations used in the course of carrying out a common enterprise, the legislature could have amended the act to include such. We agree with defendants' argument

that plaintiff's use of its fire truck and services rendered thereto are for a business purpose, not personal, family or household purposes as required by the act, and accordingly we dismiss count IV of plaintiff's complaint.

## Count III

Defendants' second objection is to count III of plaintiff's complaint which purports to set forth a cause of action in fraud. Defendants claim that count III should be stricken because it does not plead sufficient facts to indicate that defendants *intentionally* defrauded or deceived plaintiff as alleged. Specifically, defendants argue that plaintiff's allegations involve assertions made by defendants which relate to future work or future promises. Such assertions are not actionable in fraud because they do not involve a misrepresentation of an existing fact, an essential element to a cause of action in fraud.

In looking at paragraph 19 of count III, plaintiff alleges that defendants "fraudulently represented to plaintiff that the various work set forth in the specifications contained in said quotation would be and/or *had been* performed when defendant knew that such representations were wholly false or untrue." We find that the language of paragraph 19 adequately pleads a misrepresentation of an existing fact. While it is a question for the factfinder to decide whether defendants actually acted intentionally, we believe that count III sets forth the required elements to properly plead a cause of action in fraud. Defendants' objection to count III is denied.

In conjunction with defendants' objection to count III, defendants, in the alternative, request that the plaintiff prayer for punitive damages under the fraud action be stricken for lack of conformity to

the law. Defendants argue that plaintiff's complaint as a whole fails to set forth the requisite factual allegations of malicious, wanton, willful and outrageous conduct necessary to support a request for punitive damages. Furthermore, defendants claim that the complaint's allegations set forth a breach of contract action and that plaintiff is attempting to mask a breach of contract action as an action in fraud. Because punitive damages are not recoverable under a contract action, defendants maintain that plaintiff's prayer for punitive damages should be stricken.

According to the Restatement (Second) of Torts §908, comment b, defendants are correct in stating that punitive damages are not recoverable under a breach of contract claim. However, the Restatement further states that where a plaintiff pleads a breach of contract claim and a tort claim, "the breach of contract claim does not preclude the award of punitive damages if the action is brought for the tort and the tort is one for which punitive damages are proper." Restatement (Second) of Torts §908, comment b (1977). Since fraud is a proper tort action for punitive damages, we find the plaintiff's claim for punitive damages to be an issue for resolution by the factfinder. Defendants' objection to such damages is denied.

## Request for Attorney Fees

Defendants' fourth objection is to plaintiff's request for attorney fees and rule 238 delay damages. Defendants argue that for plaintiff to recover attorney fees it must assert a contractual or other entitlement to such fees. Defendants claim that plaintiff has not done so; therefore, its claim for attorney fees should be stricken. Plaintiff points out that under the Unfair Trade Practices and Consumer Protection Law, the court, in its discretion, may award at-

torney fees. However, we have ruled that plaintiff's cause of action under the Unfair Trade Practices and Consumer Protection Law shall be dismissed. Therefore, we accordingly grant defendants' request that plaintiff's request for attorney fees be stricken.

## Delay Damages

In objecting to plaintiff's request for delay damages, defendants argue that plaintiff has not followed the proper procedure for requesting such damages; thus, the request should be sticken. Defendants state that according to the procedure set forth in *Craig v. McGee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986), plaintiff may present a petition for delay damages within five days of the date of verdict for resolution by the factfinder. Plaintiff submits that it is aware of the proper procedure and that its inclusion of a request for delay damages in the complaint merely puts defendants on notice that plaintiff may petition the court for such damages. We note that at the time plaintiff filed its complaint requesting delay damages there was confusion over the proper procedure for requesting such damages in light of the *Craig* decision, which provided an interim procedure until a new rule could be promulgated. We now have a recent Supreme Court order, effective November 7, 1988, in which the Pennsylvania Supreme Court promulgated new rule 238. Under new rule 238 a plaintiff seeking delay damages must file a written motion within 10 days after the verdict and should set forth in the motion the method of computation. Within 10 days after the motion is filed the defendant may file an answer. Though the averments in said answer are deemed denied, the court in its discretion may permit a hearing when an issue of fact

is raised. After resolving all issues the court will then make its award.

We find that new rule 238 is silent as to whether a request for delay damages must first be pled in the plaintiff's complaint; therefore, we will interpret the rule as *not* requiring such until later clarification of this matter. Accordingly, we will grant defendants' request to strike plaintiff's request for delay damages in the belief that the same may be recoverable at a later point in time upon a motion by plaintiff pursuant to new rule 238.

### Paragraph 10(k)

Defendants next object to paragraph 10(k) of plaintiff's complaint in which damages are sought for "other acts or omissions of which the plaintiff is not presently aware." Defendants argue that said paragraph is a "catch-all" type of phrase which will allow plaintiff to amend its complaint and add new causes of actions or new allegations beyond the statute of limitations. Defendants ask that paragraph 10(k) be stricken.

We believe that plaintiff has had adequate time to discover any additional acts or omissions on the part of defendants. We will permit plaintiff 60 days to amend paragaph 10(k) to specifically plead any additional acts or omissions on the part of defendants, or the same will be stricken.

### Loss of Use

Defendants last objection is to plaintiff's damage claim for "loss of use of the vehicle during repairs of an unliquidated amount," as stated in paragraphs 12(c), 21 and all the prayer paragraphs of plaintiff's complaint. Defendants request that the court order plaintiff to more specifically plead their claim of loss

of use, pursuant to Pa.R.C.P. 1017(b)(3). We will grant defendants' request and, accordingly, plaintiff is ordered to plead specifics as to what "loss of use" entails and the amount of damages resulting from such loss.